### BROWN v. ARNOLD.

(Circuit Court, W. D. Missouri, C. D. January 6, 1904.)

### No. 2,271.

1. ATTORNEYS—AUTHORITY—STIPULATIONS.

Where an attorney was employed to defend an action brought by the receiver of a national bank to recover a stock assessment, the attorney had no authority, after judgment in his client's favor, and after the termination of the term of court at which the case was tried, to stipulate that a writ of error should not be prosecuted in such action, but that his client would be bound by proceedings in error in another suit between the receiver and other stockholders to which the client was not a party.

2. SAME.

A proceeding in error after judgment is a new suit, with regard to which an attorney, employed by one of the parties to represent him at the trial, has no authority to act in the absence of a new employment.

3. SAME—JUDGMENT—MOTION TO VACATE—TERMINATION OF TERM—JURISDICTION.

A court has no jurisdiction to grant a motion to set aside a judgment, after the termination of the term at which it was rendered, on the stipulation of the attorneys, that the same should abide the event of a writ of error in another cause.

SAME—EQUITY—ADEQUATE REMEDY AT LAW.

Where the making of a stipulation between attorneys that a judgment should abide the event of a writ of error in another suit was not denied, though the stipulation had been lost or mislaid, a bill in equity was not maintainable to compel vacation of the judgment on defendant's refusal to comply with the stipulation, since plaintiff had an adequate remedy at law for breach thereof.

## In Equity.

On the 4th day of May, 1894, the First National Bank of Sedalia, Mo., was declared insolvent, and a receiver therefor was appointed by the Comptroller of the Currency. On the 13th day of April, 1895, the Comptroller ordered an assessment on the stockholders of the bank of 75 per cent. of the amount of their holdings. The defendant, Arnold, being a stockholder to the extent of $2,000, par value, paid said assessment. This levy not proving sufficient to pay the debts of the bank, on the 7th day of February, 1899, said Comptroller directed another assessment of 25 per cent. on said stock. On the failure of the defendant to pay this additional assessment, suit was instituted by the receiver against the defendant in this court on the 5th day of September, 1899, to recover said additional assessment. To this suit the defendant appeared, and defended, on the ground that the first assessment made by said Comptroller exhausted his power under the statute for such purposes; that the cause of action was a unit, and could not be split up into successive assessments and actions therefor. This action coming on for hearing on the 17th day of October, 1899, the issues were found for the defendant, and final judgment was duly entered therein to the effect that the plaintiff take nothing by his said action, and that the defendant go hence without day, with his costs. The said receiver had brought several similar actions against other stockholders, which were pending in said court simultaneously with that against the defendant, attended with like result and like judgments in favor of said other defendants. Nothing more occurred in said cases at said term of court, and the court adjourned to term in course. The bill recites that afterwards, in the vacation of court, the attorney for the plaintiffs in said suits determined to prosecute writs of error on said judgments to the United States Circuit Court of Appeals, and that he notified the attorney of record of the defendant, Arnold, of his purpose to prosecute such writs of error; and that thereupon it was stipulated by and between him and said attorney for the defendant that no writ of error should be sued out on his judgment, but that said plaintiffs' counsel would prosecute a writ of error in the case of said receiver against Martha E. Smith and Sarah E. Cotton, and the judgment rendered in favor of the defendant should abide the result in the appellate court of said proceeding on error in the case against said Smith and Cotton; that said writ of error in the case against said Smith and Cotton was afterwards sued out and duly prosecuted, and on a final hearing therein in the Supreme Court of the United States, on the 17th day of November, 1902, the judgment in the case against said Smith and Cotton was reversed, and the mandate duly filed in this court. The bill of complaint alleges that, soon after the making of said stipulation in writing, it was, without the complainant's fault, mislaid, lost, or destroyed by complainant's attorney while in his custody, or that the same was lost or miscarried in the United States mails between the city of Sedalia, Mo., and Jefferson City, Mo., after being deposited by him in the mail, directed to the clerk of this court, but by which means the complainant is unable to state; that the said stipulation was never received and filed by the clerk of said court, and the said attorney of the defendant refusing, in conformity with said stipulation, to have the said judgment in favor of the defendant vacated, and judgment entered therein for the amount sued for by the receiver, plaintiff's attorney filed in this court a motion to have said judgment vacated, and for judgment for the plaintiff, which motion the defendant's said attorney declined to consent should be sustained, although admitting that such stipulation was signed by him; that, after hearing said motion, the court, on the 17th day of March, 1903, overruled the same, and thereupon the receiver brought this bill in

equity, setting out the facts aforesaid in great detail, praying to have said stipulation specifically enforced, that said judgment in favor of said defendant be vacated and set aside, and judgment rendered for the recovery of said assessment, amounting to the sum of $500. The defendant, having been duly subpœnaed, appears by other counsel employed in this cause, and demurs to the bill.

William S. Shirk, for complainant.
Montgomery & Montgomery and Sangree & Lamm, for defendant.

PHILIPS, District Judge (after stating the facts as above). The first question lying at the very threshold of this case is, did Thomas' Montgomery, who was the attorney in question of the defendant in the law action, have authority to bind the defendant by the alleged stipulation? When the final judgment was made and entered of record in favor of the defendant, and the term of court adjourned, without more, he had a right to return to his distant home under the assumption that the matter was at an end so far as he was concerned, and that after the adjournment of the term the court lost jurisdiction over the case. Pending the litigation between the receiver and the defendant, the attorneys in the case were clothed with many powers impliedly delegated by the client. The attorneys can stipulate respecting matters of evidence, can make binding admissions, consent to continuances, waive trial by jury, withdraw papers, amend the pleadings, change the issues, and during the term consent to a modification of the judgment, and as to time for filing bills of exceptions, appeal bonds, and the like. Gaillard v. Smart, 6 Cow. 385; Union Bank v. Geary, 5 Pet. 99, 8 L. Ed. 60; Chicago, etc., R. R. Co. v. Hintz, 132 Ill. 265, 23 N. E. 1032; Wieland v. White, 109 Mass. 392; Barrett v. Third Avenue, 45 N. Y. 628. But the books and decisions lay down the rule to be that, after final judgment in a suit at law, and the adjournment of the term, without more, the attorney's employment is at an end, and he is without power, sua sponte, to bind his client by any stipulations he may make affecting the judgment. While the attorney of the judgment creditor continues with implied authority for the issuing of execution for the enforcement of the judgment, and other steps necessary for the collection of the money thereon, and the like, yet he has no implied power to discharge the judgment, nor to consent to vacate a judgment pending on appeal. Weeks on Attorneys (2d Ed.) § 239. After the rendition of final judgment the original attorney by whom the suit was prosecuted or defended has no authority, resulting from the original employment, to consent to set it aside. Holbert v. Montgomery's Adm'rs, 5 Dana, 11; Harrow v. Farrow's Heirs, 7 B. Mon. 126, 45 Am. Dec. 60. Weeks on Attorneys asserts the rules as follows:

"When the attorney undertakes acts out of the usual range of his duties, the presumption of authority, based upon his general employment, no longer applies. Parties dealing with him in such cases are put upon their inquiry as to his authority. If they do not inquire, their loss is imputable to their own negligence." Section 242.

"An attorney is only authorized to appear and act for his client in the proceedings which constitute a part of the action. He has no authority to appear for the party in other proceedings not forming essentially a part of the action." Section 243.

"It is a rule, sustained by numerous authorities, that the authority of the attorney ceases with the termination of the suit and the entry of judgment, and it is equally true that in the absence of special circumstances the authority continues, by virtue of the original retainer, until the final termination of the cause. * * * It follows, as a consequence of the doctrine that the attorney's authority ceases with the determination of the cause, that a party may sue out a writ of execution, scire facias, or error by a different attorney without giving notice of the change. * * * After judgment, the attorney employed has no authority to revive or reverse the judgment without another warrant of attorney." Section 248.

"So, the employment of an attorney to defend an action pending in a trial court does not, under ordinary circumstances, authorize him to take an appeal to a higher court from the judgment rendered against his client." Section 249a.

The relation of attorney to a judgment obtained is considered, and the authorities are discriminatingly collected, in Berthold v. Fox et al., 21 Minn. 51. The court lays down the recognized rules to be that:

"At common law the authority of an attorney to represent his client in an action ceased upon the entry of judgment, but for a year and a day thereafter he had authority to act for his client in enforcing the judgment by execution, etc. Com. Dig. 'Attorney,' B, 10; 2 Inst. 378; 1 Tidd, Pr. 93. * * * But neither the common law nor any statute continues after judgment the authority of the attorney for the defeated party, the judgment debtor, or the defendant in the judgment, as he is aptly styled. * * * After judgment, unless the defendant, by appeal or otherwise, seeks a reversal or modification thereof or a stay of proceedings thereon, no reason is apparent why he should be represented by attorney, or why the authority of his attorney in the action should be presumed to continue. All that remains to be done in the action is the enforcing of the judgment. * * * A judgment creditor may employ a new attorney to enforce the judgment, without any formal substitution or notice to the defendant. * * * As Mr. Corman's [the attorney] retainer expired at the entry of the judgment, service upon him was not service upon his client, and the latter has not received the notice to which he is by law entitled. For this reason, the order appealed from by him must be reversed."

In People v. Mayor, etc., of New York, 11 Abb. Prac. 66, it is held that after judgment the attorney for the judgment defendant has no implied power, even at the term, to stipulate that his client will not appeal. The court, inter alia, said:

"While the attorney has all the authority necessary for the conduct and management of the action and for the collection of the debt, if any, his powers go no further. He has no further or greater authority, even if he thinks it, for the benefit of his client. * * * He is vested with all necessary power and authority for the management of the case intrusted to him, and for carrying into effect the orders and judgments of the court. If he enters into stipulations pertinent to the matter intrusted to him, he can thereby bind his client. * * * But his acts done outside of the matter committed to his charge are not binding, and, when he undertakes to bind his client by stipulating as to matters not connected with the action, such agreements are not binding."

This same doctrine is laid down in Howe v. Lawrence, 22 N. J. Law, 99. In that case there was a stipulation for allowing another trial. The Chief Justice said:

"The stipulations were that all necessary papers should be filed out of time, that all irregularities in the steps taken should be waived, that the same judgments should be entered in the cases as were entered in that," and other provisions were made after judgment was entered. "The stipulation to waive

the judgment was not an agreement for the conduct of the cause; it was a deliberate surrender of his client's rights, a surrender which I conceive the counsel had no power to make, and which, if he had the power, justice would never permit to be enforced."

The case of Deen v. Milne, 113 N. Y. 303, 20 N. E. 861, relied upon by complainant's counsel, is not in point. In the progress of the trial of a suit pending in the Supreme Court, the court held that the pendency of a suit inter partes in the marine court, where there had been a judgment for costs, constituted a barrier to recovery in the pending suit. Thereupon, in order to remove this obstacle to recovery, the attorneys stipulated that the proceedings in the marine court should be discontinued and discharged. It was accordingly found by the Supreme Court that upon the making of such stipulation, the obstacle to recovery being thus removed, the trial therein could proceed to judgment; from which it is to be observed that the stipulation was made by the defendant's attorney while actually engaged in the trial of a cause in which he was employed, and respecting its successful conduct, when, presumptively, the client was present in court, without which no recovery could be had in the pending suit, which recovery would be far more advantageous to the client than that in the marine court. But that presents a far different case from the question of the power of the defendant's attorney after final judgment in the marine court, and after the end of the term, when he was no longer the attorney of the defendant, to undertake to stipulate with plaintiff's counsel that if he would not sue out a writ of error his client would abide the result of some other similar case that might thereafter be taken to the court of errors.

It was ruled by Judge McCrary, while presiding in this circuit, in Grames v. Hawley (C. C.) 50 Fed. 319, that the law presumes that the relation of attorney and client is at an end when final judgment is rendered and the court is past, except for the purpose of receiving service of citation, and the like, on error and appeal. The court said:

"The rule governing the decision of this question of jurisdiction is that, at the end of the term at which there is a final disposition of the case (final in the sense that, if not appealed from, it ends the controversy, the parties are dismissed sine die. * * * If they had employed an attorney, they may then discharge him, with the assurance that the controversy is at an end, and can be renewed only by proceedings in the nature of error or appeal, and that, except in the event of such proceedings, no valid service of process can be made upon the attorney. * * * There is no presumption of law that the relation of attorney and client continues after the termination of the litigation, and after the final adjournment of the term at which a final judgment is rendered."

Indeed, the authorities are quite uniform in holding that the rendition and entry of a judgment and the close of the term terminate the relation between attorney and client. Egan v. Rooney, 38 How. Prac. 121; Lusk v. Hastings, 1 Hill, 659; McLain v. Watkins, 43 Ill. 24; Test v. Larsh, 98 Ind. 301; White v. Johnson, 67 Me. 287; Clark v. McGregor, 55 Mich. 412, 21 N. W. 866; Jackson v. Bartlett, 8 Johns. 361; Mordecai v. Charlestown Co., 8 S. C. 100; Dooley v. Dooley, 9 Lea, 306; Dennis v. Jones, 31 Miss. 607; Hay v. Cole, 50 Ky. 70; Hoffman v. Cage, 31 Tex. 595; Neff v. Barr, 14 Serg. & R. 166;

Davis v. Soloman (Sup.) 56 N. Y. Supp. 80; Williams v. Maxwell (W. Va.) 31 S. E. 909.

It has been held by the Supreme Court of Missouri, in North Missouri Railroad Company v. Stephens, 36 Mo. 150, 88 Am. Dec. 138, that where several suits were brought by the same plaintiff against different defendants, the defenses being the same in each case, and the attorneys of the several parties agreed that all the cases should abide the final decision in one case, the agreement was within the attorneys' authority, and was binding upon the parties. But it is again to be observed that the stipulation in that case was made by the attorneys while the cause in which they were employed, as also the other cases, were pending in the trial court, and before judgment.

Mr. Justice Peckham, in Stone v. Bank of Commerce, 174 U. S. 412, 422, 19 Sup. Ct. 747, 751, 43 L. Ed. 1028, speaking to the question of the extension of the rule to cases so situated, said:

"When an attorney has been retained he has certain implied powers to act for his client, in a suit actually commenced, in the due and orderly conduct of the case through the courts. In cases of suits actually pending, he may agree that one suit shall abide the event of another suit involving the same question, and his client will be bound by this agreement. Ohlquest v. Farwell, 71 Iowa, 231 [32 N. W. 277]; North Missouri Railroad Company v. Stephens, 36 Mo. 150 [88 Am. Dec. 138]; Eidam v. Finnegan, 48 Minn. 53 [50 N. W. 933, 16 L. R. A. 507]; Gilmore v. American Central Insurance Company, 67 Cal. 366, 7 Pac. 781; 1 Lawson, Rights, Rem. & Prac. p. 292, § 173; 1 Thomp. Trials, § 195.

"One case has gone to the extent of holding the attorney's authority to agree that the case of his client should abide that of another included his right to agree that the case should abide that of another involving the same question, although his client was not a party to that case, and had no power to interfere in its prosecution or defense. Scarritt Furniture Company v. Moser, 48 Mo. App. 543, 548.

"There might, perhaps, be some doubt about the correctness of a decision which so extended the power of the attorney. It would be carrying the authority of an attorney a good way to thus hold."

As suggested by Judge McCrary in Grames v. Hawley, supra, the only exception recognized to the rule that service upon an attorney after the termination of the cause in which he is employed was not binding on the client is that, in case of appeal or writ of error, service of citation may be made upon the attorney who appeared of record for the adverse party in the trial court. There does not seem to be any statutory provision or prescribed rule of court touching the service of such notice upon the attorney. My investigation leads to the conclusion that, in so far as the federal courts are concerned, the practice had its origin in the English chancery courts, and arose, ab inconvenienti, from the necessities of the case, where the litigant might be beyond the seas or remote from the court, while the attorney or counsel was presumably resident in the vicinity of the court, and readily found for such service. Hence, it became the doctrine of the chancellors that, for the purpose of such notice, counsel of record could not withdraw his name from the docket without leave of court. This rule has arbitrarily been extended in practice to writs of error.

It is now sought by this bill to extend this mere rule of practice beyond any precedent found, by asking the court to hold that such

attorney can, after the determination of the law action by final judg-. ment and the end of the term, bind his former client by stipulation that no writ of error at all shall be sued out by the judgment defend- ant, and that the client shall abide the result of a proceeding on error. to which he is not a party and which he has no right to control.

There is one further rule of law which, if regarded, decides this case. It is well settled that a writ of error is a new suit. Macklin v. Allenberg, 100 Mo., loc. cit. 343, 13 S. W. 350; Delaney v. Husband, 64 N. J. Law, 275, 276, 45 Atl. 265. After judgment the attorney em- ployed has no authority to revive or reverse the judgment without an- other warrant of attorney. Richardson v. Talbot, 2 Bibb, 382. It is likewise held by the Supreme Court of the United States that parties cannot confer jurisdiction on that court by agreement, without suing out a writ of error, and consequently no case is pending until the writ is issued and citation served. Washington County v. Durant, 7 Wall. 694, 19 L. Ed. 164; Alviso v. United States, 5 Wall. 824, 18 L. Ed. 492. Therefore, until a writ of error was sued out by the de- feated party in the judgment rendered in this court, there was no suit pending in which a citation could have been issued to be served on the attorney of record. There was nothing pending respecting which he could stipulate. And as all the authorities hold that presumptively the relation of attorney and client terminated with the end of the litigation in the trial court, and that without a new employment he had no con- nection with the new suit in the court of errors, he was without au- thority to stipulate respecting a citation and the result of any other suit pending; much less, where there had been no writ of error sued out and no suit pending, could he make the stipulation alleged in the bill of complaint.

The discussion might well end here; but, in view of the prominence given in the bill to two incidents connected with the history of this controversy, it may not be impertinent to say that the action of the court in overruling the motion to set aside the judgment and rein- state the case on the docket was correct. After the adjournment of the term at which the judgment was rendered, the court lost control of the entry, and such motion made at a subsequent term could not be entertained—based on a stipulation made in pais by the attorneys after the adjournment of the term of court. Phillips v. Negley, 117 U. S. 665, 6 Sup. Ct. 901, 29 L. Ed. 1013; Tubman v. Baltimore & Ohio Railroad Company, 190 U. S. 38, 23 Sup. Ct. 777, 47 L. Ed. 946. The court suggested on the hearing of said motion that it was also sub- ject to the objection that no notice had been given to the defendant, the former attorney of the defendant appearing at the hearing of said motion as a witness, under subpoena issued by the plaintiff. The bill of complaint also recites that the judge of this court, in a letter to complainant's attorney after the adjournment of the term of court at which said judgment was rendered, suggested, in the interest of economy, the advisability of procuring such stipulation respecting the prosecution of only one writ of error in said causes. For what purpose this is lugged into the bill is not apparent, unless it is in- tended to create an estoppel on the judge as to his ruling when sitting as a court. It was certainly not ex cathedra, but a vacation note to

counsel, cum amori.  Furthermore, the judge should be indulged the presumption that it was intended that whatever stipulation plaintiff's counsel should obtain, to be effective, should have the legal assent of the defendant.  Most certainly the judge did not expect that when counsel obtained a stipulation he should consign it to some unmapped potter's field, without head or foot board, and that the court should be required to become the angel of its resurrection.

Neither is the court satisfied that the complainant has not an adequate and complete remedy at law on the agreed stipulation, if valid. The situation is quite distinguishable from that of Deen v. Milne, supra.  In that case the stipulation in question, in its essential parts, was denied by the opposing party, and had to be established by evidence aliunde before it could be enforced, and the decree of the marine court for costs vacated in order to effectuate the judgment of the Supreme Court based upon the agreement that the proceeding in the marine court should be discharged.  Here, according to the allegations of the bill, the entering into the stipulation by the attorneys is not denied.  Why, therefore, would not an action at law lie upon the agreement for failure to perform, if valid and supported by sufficient consideration?  The practice act provides for suits founded upon lost written instruments.  The damages would be palpable, easy of ascertainment, as they would be for the amount of the assessment made upon the defendant's stock, to wit, $500, with interest and costs.  By the law action, based on the stipulation, the plaintiff would get precisely what he seeks ultimately by this bill in equity—a judgment against the defendant for the sum of $500, with interest and costs.

The demurrer is sustained.